[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MOTION TO SUPPRESS EVIDENCE
The defendant Gary Cooke was arrested during the early morning hours of December 1, 2001. The defendant was transported from the scene of the crime to the Bridgeport Police Department Detective Bureau during those early morning hours. The basic facts surrounding the interrogation of the defendant that took place at the Bureau are not in dispute.
The defendant had a conversation with Detective Wayne McBride of the Bridgeport Police Department at 3:28 a.m. the morning of December 1st. Detective McBride asked the defendant if he would like to give a statement. The defendant declined to give a statement, at which time Detective McBride and the defendant discussed their personal lives. Detective McBride ceased interrogating the defendant and the defendant was allowed to return to the holding cell from the interview room where the conversation took place.
During the afternoon hours of December 2nd Detective McBride requested to speak with the defendant. The defendant was taken from the holding cell to the interview room where he again began a conversation with Detective McBride. The defendant again discussed personal matters with Detective McBride. Detective McBride asked the defendant if he wanted to give a statement about the incident and the defendant again declined. During this personal conversation the defendant mentioned to McBride that he wanted to say goodbye to his girlfriend before going away for a long time. Detective McBride assured the defendant that he would attempt to contact her so the defendant could speak with her. Ms. Yvette Torraco, the defendant's girlfriend, was contacted by Detective McBride at 2 p. m. that afternoon. Ms. Torraco arrived at the police station minutes later and was allowed to speak with the defendant in the presence of Detective McBride.
Both Detective McBride and Ms. Torraco encouraged the defendant to give a statement regarding the incident during this conversation. At that time he did not give a statement, although encouraged to do so by his CT Page 2905-ci girlfriend. Ms. Torraco left the interview room in order to purchase the defendant some food. Ms. Torraco returned minutes later. The defendant reported that Detective McBride and another police officer were attempting to persuade the defendant to give a statement. The defendant testified that the detectives offered the defendant a more lenient charge relating to a gun, if he gave a statement about the incident.[1]
The defendant began giving a statement about the incident after Ms. Torraco had left the interview room. Detective McBride and Detective John Tenn informed the defendant of his Miranda rights orally and in written form before the defendant delivered the statement. The interview of the defendant began at 4:38 p. m. and ended at 6:15 p. m. During that time Ms. Torraco returned and she was allowed to bring the food to the defendant. The defendant signed the written waiver of his rights and signed every page of the written statement. The defendant also waived his right to the presence of an attorney during the interrogation.
The defendant contends that he had fully invoked his right to remain silent during the early morning hours of December 1st, and afternoon of December 2d 2001. The defendant argues that he did not waive his constitutional right to remain silent and should not have been interrogated, thus the statement should not be admitted into evidence.
Law
The defendant mistakenly relies on the United States Supreme Court's decision in Michigan v. Mosley, 423 U.S. 96 (1975). The Court held that ". . . the admissibility of statements obtained after the person in custody has decided to remain silent depends under Miranda on whether his `right to cut off questioning' was `scrupulously honored.'" Mosley,423 U.S. at 104. The Court concluded that the defendant's right to cut off questioning was scrupulously honored based on four factors. These four factors listed by the United States Supreme Court are relevant to the facts of the instant case.
First, the Court concluded that the defendant's right to cut off questioning was fully respected when the first police officer had immediately ceased his interrogation when the defendant invoked his right to remain silent. Mosely, 423 U.S. at 104. In this case, Detective McBride ceased the interrogation whenever the defendant declined to give a statement. On the morning of December 1st and the afternoon of December 2d 2001, Detective McBride ceased the interview when the defendant declined to give a statement. The defendant was encouraged to give a statement by Ms. Torraco and Detective McBride, but there is no evidence or claim of coersion leading to the defendant giving the statement. There CT Page 2905-cj is no evidence of the police detectives being "in repeated efforts to wear down his resistance and make him change his mind." Id. at 105. The defendant was not coerced to give a statement even though the detectives promised consideration of lesser charges in his case.
Second, the Court in Mosley concluded that a second interrogating officer waiting a significant period of time before interrogating the defendant, more than two hours, fully respected the defendant's right to cut off questioning. Id. at 104. The defendant in this case did not give his statement until more than a full day from the initial conversation with Detective McBride that occurred on December 1st. There was not a second interrogating officer in this case. The defendant has argued that the statement cannot be admitted because of the failure to have two separate interrogating officers as were present in Mosley. That argument would lead to a result contrary to the meaning of Mosley as interpreted by the Connecticut Supreme Court in State v. Stanley, 223 Conn. 674, 694
(1992). The court stated that the reasoning in Mosley, ". . . refused to `create a per se proscription of indefinite duration upon any further questioning by any police on any subject, once the person in custody has indicated a desire to remain silent.'" Stanley, 223 Conn. at 694, citingMosley, 423 U.S. at 102-03.
Third, the Court in Mosley concluded that the defendant's right to cut off questioning was fully protected, because the reinterrogation concerned a crime unrelated to the first interrogation. The defendant inStanley as the defendant in this case, was not questioned about two separate crimes. The Connecticut Supreme Court concluded that, "We do not interpret Mosley to stand for the proposition that the police can never reinterrogate a suspect, who has invoked his right to remain silent, regarding the same crime about which he refused to talk." Stanley,223 Conn. at 693. The court interpreted this factor as not being the sole conclusive factor of the Mosley test and that it was only one of four possible factors that is considered in determining whether the defendant's right to cut off questioning has been fully protected.
Fourth, the defendant must be advised of his Miranda rights before the second interrogation has begun. Mosley, 423 U.S. at 105. Detective McBride informed the defendant of his Miranda rights. The defendant was given a Miranda rights waiver form which he read and signed. The defendant signed the waiver form indicating that he understood the implications of the waiver of his rights.
The standards of reinterrogation established by the United States Supreme Court have been met in this case. The right of the defendant to cut off questioning was scrupulously honored by Detective McBride and the CT Page 2905-ck Bridgeport Police Department. The defendant also signed a valid waiver form, waiving his constitutional right to remain silent. Therefore the statement was properly attained and should be admitted into evidence.
The Motion to Suppress is denied.
OWENS, J.